625 S.E.2d 305

**STANDARD DISTRIBUTING, INC., Associated Wine and Spirits, Inc., and Robert Person, Plaintiffs Below, Appellants,**

v.

**CITY OF CHARLESTON, Defendant Below, Appellee.**

No. 32707.

Supreme Court of Appeals of West Virginia.

Submitted: Oct. 11, 2005.

Filed: Nov. 29, 2005.

Jason Goad, Esq., Hunt & Serreno, Charleston, for Appellants.

Karen Tracy McElhinny, Esq., Shuman, McCuskey & Slicer, PLLC, Charleston, for Appellee.

The Opinion of the Court was delivered PER CURIAM.

PER CURIAM.

This case is before this Court upon appeal of a final order of the Circuit Court of Kanawha County entered on November 22, 2004. In that order, the circuit court granted, in part, a motion to dismiss filed by the appellee and defendant below, the City of Charleston (hereinafter "the City"), in this action instituted by the appellants and plaintiffs below, Standard Distributing, Inc., Associated Wine and Spirits, Inc., and Robert Person (hereinafter collectively referred to as "the appellants"), to recover liquor licensing fees which were paid annually from 1982 to 2002. In this appeal, the appellants contend that the circuit court erred by finding that the fees were paid voluntarily; that the City had provided predeprivation relief; and that the City was immune from liability pursuant to the Governmental Tort Claims and Insurance Reform Act.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order is affirmed.

## I.

## FACTS

Robert Person is the owner of Associated Wine and Spirits, Inc., and Standard Distributing, Inc. Both corporations have been in the business of wine distribution in Charleston, West Virginia. From 1982 until 2002, the corporations paid a liquor license fee to

the City in the amount of $2,500.00 per year.[1] The businesses completed reporting forms they received from the City and returned them along with the requisite fee.

Sometime prior to June 3, 2004, Mr. Person learned of this Court's decision in *Rite Aid of West Virginia, Inc. v. The City of Charleston,* 189 W.Va. 707, 434 S.E.2d 379 (1993). In that case, this Court found that the City's municipal ordinance which imposed a license fee on businesses selling liquor was invalid because W.Va.Code § 60–4–18 (1935)[2] prohibited a municipal corporation from imposing a fee or special tax as a condition upon the exercise of a state-issued liquor license.[3] 189 W.Va. at 709, 434 S.E.2d at 381. Based upon the decision in *Rite Aid,* Mr. Person sought reimbursement for the liquor license fees he had paid to the City through his businesses from 1982 through 2002. However, the City refused to refund the fees, and the parties were unable to reach a settlement. Consequently, Standard Distributing, Inc., Associated Wine and Spirits, Inc., and Mr. Person, the sole shareholder of both corporations, filed suit on June 3, 2004, against the City seeking a refund of the licensing fees paid from 1982 through 2002. In response, the City filed a motion to dismiss.

On November 18, 2004, the circuit court granted the City's motion to dismiss, in part, finding that the appellants had paid the licensing fees voluntarily and that the City had provided predeprivation relief. The court further found that the City had statutory immunity as to the appellants' negligence claim. However, the court also determined that the City was liable for three years of overpayments pursuant to Charleston City

Code § 6–137.[4] Thus, the Court ordered the City to refund the appellants' last three years of license overpayments pursuant to that city ordinance. The final order was entered on November 22, 2004, and this appeal followed.

## II.

### STANDARD OF REVIEW

■ As noted above, the appellants appeal from an order granting, in part, the City's motion to dismiss. This Court has held that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995). Accordingly, with this standard in mind, we consider the parties' arguments.

## III.

### DISCUSSION

The appellants sought a refund of the licensing fees they paid to the City from 1982 to 2002 asserting two grounds for recovery. First, the appellants alleged that they had been deprived of property without due process of law in violation of the due process clause of the 14th Amendment of the United States Constitution. Secondly, the appellants alleged that the City was negligent by collecting fees which were barred by W.Va. Code § 60–4–18 (1935). We will address each issue below.

### A. The Deprivation of Property Claim

■ In their complaint, the appellants first alleged that they were deprived of prop-

---

1. According to the complaint, Mr. Person began paying the licensing fees in the name of Associated Wine and Spirits, Inc., and then subsequently, in the name of Standard Distributing, Inc.

2. W.Va.Code § 60–4–18 (1935) states:
 A municipal corporation shall not impose a fee or a special tax as a condition upon the exercise of a license issued under the provisions of this chapter.

3. In 1999, the Legislature amended W.Va.Code § 60–3A–12 and added the following provision:
 (e) Notwithstanding any provision of section eighteen [§ 60–4–18], article four of this chapter to the contrary, a municipality may invoke

the authority granted by section four [§ 8–13–4], article thirteen, chapter eight of this code to require an annual license from each retail licensee and require payment for the license in amounts not to exceed the amounts provided in subsection (a) of this section.
Thus, municipalities now have the authority to require an annual retail liquor license and to charge a fee for that license.

4. Charleston City Code § 6–137 was amended and reenacted as Charleston City Code § 110–33 on January 22, 2002.

erty without due process of law in violation of the due process clause of the 14th Amendment of the United States Constitution, and therefore, were entitled to a refund of the fees they paid. "Ordinarily, in the absence of any statutory right permitting recovery, a voluntary payment of a tax made under a statute which is later declared unconstitutional cannot be recovered." Syllabus Point 7, *City of Fairmont v. Pitrolo Pontiac–Cadillac Co.*, 172 W.Va. 505, 308 S.E.2d 527 (1983). As was noted in *Pitrolo*, "We are aware of no statute in this State authorizing recovery for payment of municipal taxes under an unconstitutional ordinance." 172 W.Va. at 512 n. 16, 308 S.E.2d at 534 n. 16.

■ In this case, the appellants claim that they did not pay the licensing fees voluntarily but rather, were required to do so in order to stay in business. Generally, payment of a tax is deemed to be voluntary if there are opportunities for predeprivation relief. In *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, Dept. of Business Regulation of Florida*, 496 U.S. 18, 38 n. 21, 110 S.Ct. 2238, 2251 n. 21, 110 L.Ed.2d 17, 37 n. 21 (1990), the Supreme Court of the United States explained that:

[W]hen a tax is paid in order to avoid financial sanctions or a seizure of real or personal property, the tax is paid under "duress" in the sense that the State has not provided a fair and meaningful predeprivation procedure. . . .

In contrast, if a State chooses not to secure payments under duress and instead offers a meaningful opportunity for taxpayers to withhold contested tax assessments and to challenge their validity in a prede-

privation hearing, payments tendered may be deemed "voluntary." The availability of a predeprivation hearing constitutes a procedural safeguard against unlawful deprivations sufficient by itself to satisfy the Due Process Clause, and taxpayers cannot complain if they fail to avail themselves of this procedure.

(Citations omitted).

The appellants argue that the City's ordinances do not afford any predeprivation relief. While acknowledging that the ordinances do provide a hearing for a business that forfeits its license, the appellants contend that the business would be unable to operate for at least a month or longer if it chose to challenge the fee. Therefore, the appellants reason that the City has not actually provided any predeprivation relief.

A close examination of the applicable city ordinances shows that contrary to the appellants' assertions, there are provisions for meaningful predeprivation relief including the opportunity to assert objections to the fee in an enforcement proceeding and the right to appeal that decision.[5] Moreover, the appellants' claim that they would have to stop doing business while they challenged the fee is without merit. Rather than shutting down a business for nonpayment of the fee, the applicable city ordinance provides that the city collector may levy a penalty against the business in the amount of 5% of the license tax for each month during which the failure to pay continues. The ordinance further states that such penalties shall be waived if the failure to pay the tax is due to reasonable cause and not due to willful neglect.[6]

5. Charleston City Code § 18–41 (1975) provides, in pertinent part:

(c) The city collector shall refuse to renew an annual license on any business which has failed to file any tax return or permit application as required by any provision of this chapter or which has failed to pay any delinquent taxes or fees or any interest or penalty due and owed the city by reason of operating a business within the city's jurisdiction. Any business which has been adversely affected by an order or decision of the city collector or his representative relating to the granting of a renewal certificate may appeal such determination by requesting a hearing from the city collector or

his examiner within 30 days from receipt of such order or decision.

(d) The city collector shall issue a ruling within a reasonable time from date of the hearing. An appeal may be taken by the business to the circuit court of the county within 30 days after he shall have received notice from the city collector of his determination as provided in this section.

6. Charleston City Code § 18–44 (1975) states:

If any person engages in or prosecutes any business, activity, trade or employment without obtaining a license before commencing the business, activity, trade or employment or continues the business, activity, trade or employ-

Clearly, the Charleston City Code provides a fair and meaningful predeprivation procedure sufficient to satisfy the due process clause. Pursuant to the ordinances, the appellants could have refused to pay the fee and instituted a challenge to the license requirement with a request for waiver of the penalties for nonpayment. However, they did not do so. The appellants simply did not take advantage of the predeprivation relief, nor did they even register a complaint with the City regarding the fee. Instead, the appellants completed the self-reporting form identifying themselves as a "wine distributor" and paid the fee voluntarily without protest. Consequently, the appellants' claim that they did not pay the fee voluntarily and were deprived of property without due process is without merit.[7]

### B. The Negligence Claim

■ The appellants also asserted in their complaint that the City was negligent because it knew or should have known that the municipal liquor license fee was invalid and that by continuing to collect the fees, the City's actions amounted to a "continuing tort." The appellants contend that, contrary to the findings of the circuit court, the City is not immune from liability for its negligence pursuant to the Governmental Tort Claims and Insurance Reform Act, W.Va.Code §§ 29–12A–1 to 29–12–18 (hereinafter "Tort Claims Act"). We disagree.

■ The Tort Claims Act "was enacted by the legislature in 1986 'to limit liability of political subdivisions and provide immunity to political subdivisions in certain instanc-

es....' " *Walker v. Meadows,* 206 W.Va. 78, 82, 521 S.E.2d 801, 805 (1999). It was "the result of legislative findings that political subdivisions of the State were unable to obtain affordable tort liability insurance coverage without reducing the quantity and quality of traditional governmental services. W.Va.Code, 29–12A–2." *O'Dell v. Town of Gauley Bridge,* 188 W.Va. 596, 600, 425 S.E.2d 551, 555 (1992). Accordingly, "to remedy this situation, the legislature specified seventeen instances in which political subdivisions would have immunity from tort liability. W.Va.Code, 29–12A–5(a)." *Id.* Of those seventeen exceptions, at least two are applicable in the case *sub judice.*

W.Va.Code § 29–12A–5(a) provides that:

A political subdivision is immune from liability if a loss or claim results from:

(1) Legislative or quasi-legislative functions;

. . . .

(9) Licensing powers or functions including, but not limited to, the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority[.]

At issue here is an ordinance enacted by the City imposing a licensing requirement and fee upon businesses selling and distributing liquor. The appellants argue that the City does not have immunity under either subsection because it never had the power to require a municipal liquor license pursuant to W.Va.Code § 60–4–18. In other words, the appellants assert that the City was not performing a legislative or licensing function but

---

ment after the termination of the effective period of any such license, there shall be added to the amount of the license tax required by the provisions of this chapter a penalty equal to five percent of the amount of such license tax if the failure to pay the required license tax is for not more than one month, with an additional five percent for each additional month or fraction during which failure continues, such penalty not to exceed 50 percent of the required license tax. Such penalties shall be waived if the failure to pay the required license tax was due to reasonable cause and not due to willful neglect.

7. The appellants also contend that at the very least they should be reimbursed for the fees they paid after the *Rite Aid* decision was issued by this Court because at that time, the City was on

notice that the license fee was invalid. In support of this argument, the appellants rely upon *Tyler County Court v. Long,* 72 W.Va. 8, 13–14, 77 S.E. 328, 330 (1913), a case wherein this Court stated that "the general rule seems to be that voluntary payment, made by mistake or ignorance of law, but with full knowledge of all the facts, and not induced by fraud or improper conduct on the part of the payee, cannot be recovered back." The appellants argue that in this case the payments were in fact induced by improper conduct on the part of the payee-the City. However, the appellants never presented any evidence of fraud or other improper conduct on the part of the City with regard to its collection of the licensing fee. Thus, we find no merit to the appellants' argument.

rather an illegal one when it continued to collect the licensing fees following the *Rite Aid* decision. Thus, the appellants reason that the immunity provisions are not applicable. Again, we disagree.

 As discussed above, the stated purpose of the Tort Claims Act is to limit the liability of political subdivisions. To that end,

> The plain language of *W.Va.Code*, 29–12A–4(c)(2) [1986] expressly provides that the liability of a political subdivision for injury to property allegedly caused by the negligent performance of acts by their employees is *"[s]ubject to sections five and six [§§ 29–12A–5 and 29–12A–6] of this article."*

*Hose v. Berkeley County Planning Commission*, 194 W.Va. 515, 521, 460 S.E.2d 761, 767 (1995). Accordingly, this Court held in Syllabus Point 4 of *Hose* that,

> Pursuant to *W.Va.Code*, 29–12A–4(c)(2) [1986] and *W.Va.Code*, 29–12A–5(a)(9) [1986], a political subdivision is immune from liability if a loss or claim results from licensing powers or functions such as the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority, regardless of whether such loss or claim is caused by the negligent performance of acts by the political subdivision's employees while acting within the scope of employment.

Likewise, W.Va.Code § 29–12A–4(c)(2) and W.Va.Code § 29–12A–5(a)(1) provide immunity to a political subdivision if a loss or claim results from legislative or quasi-legislative functions regardless of whether the loss or claim is caused by negligence on the part of the subdivision's employees while acting within the scope of employment.

 The appellants' contention that the Tort Claims Act has no application here because a municipal liquor license was barred by W.Va.Code § 60–4–18 would render the statute meaningless. Clearly, that was not the intention of the Legislature.[8] As we explained in *Hose,* our traditional principle of statutory analysis requires us to accept the plain meaning of statutes which are clear and unambiguous. 194 W.Va. at 521, 460 S.E.2d at 767. The plain language of the Tort Claims Act provides political subdivisions immunity for a loss or claim resulting from "legislative functions" and "licensing powers or functions." Furthermore, as we noted in *Hose,* the statute clearly states that the immunity is not lost even if the loss or claim is the result of a negligent act. Therefore, the City is clearly immune from liability for any negligence arising out its enactment of the ordinance requiring a liquor license fee and the administration and enforcement of that ordinance.

 The appellants further claim that the Tort Claims Act does not apply in this case because they have a special relationship with the City. However, in Syllabus Point 5 of *Hose* this Court specifically found that,

> *W.Va.Code,* 29–12A–5(a)(9) [1986] clearly contemplates immunity for political subdivisions from tort liability for any loss or claim resulting from licensing powers or functions such as the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority, regardless of the existence of a special duty relationship.

Thus, the appellants' claim is without merit.

 We also find no merit to the appellants' argument that the City engaged in wanton and reckless conduct by continuing to try to collect the liquor license fee not only after the *Rite Aid* decision, but also after suit was filed in this case, and therefore, the immunity statute does not apply.[9] In *Holsten v. Massey,* 200 W.Va. 775, 788, 490 S.E.2d 864, 877 (1997), this Court explained that:

> The usual meaning assigned to "willful," "wanton" or "reckless," according to taste

---

8. "It is always presumed that the legislature will not enact a meaningless or useless statute." Syllabus Point 4, *State ex rel. Hardesty v. Aracoma–Chief Logan No. 4523, Veterans of Foreign Wars of the United States, Inc.,* 147 W.Va. 645, 129 S.E.2d 921 (1963).

9. W.Va.Code § 29–12A–5(b) provides, in pertinent part:

> An employee of a political subdivision is immune from liability unless one of the following applies:
> . . . .

as to the word used, is that the actor has *intentionally* done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a *conscious* indifference to the consequences, amounting almost to willingness that they shall follow; and it has been said that this is indispensable.

(Citations omitted.) Upon review of the record, we find no evidence that the City engaged in wanton and reckless conduct.

In summary, we are unable to find that the circuit court erred by dismissing the appellants' negligence claim against the City. The City is clearly immune from liability pursuant to the Tort Claims Act.[10]

## IV.

### CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Kanawha County entered on November 22, 2004, is affirmed.

Affirmed.

(2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]

**10.** Having affirmed the final order, we need not address the City's argument that this appeal should have been dismissed because of the appellants' acceptance of a refund check tendered by the City for three years of overpayments of the license fee as ordered by the circuit court.